## SMITH v. WARNOCK.

## WARNOCK v. SMITH.

(Court of Appeals of District of Columbia. Submitted January 20, 1921. Decided March 7, 1921.)

Nos. 1363, 1365.

1. Patents ⬯90(5)—Actual test, and not completion of machine, constitutes reduction to practice.

It is the actual test of a machine, and not the time of its completion, that is essential to establish reduction to practice.

2. Patents ⬯90(5)—Nunc pro tunc reduction to practice not recognized.

The patent law recognizes no such thing as reduction to practice nunc pro tunc.

3. Patents ⬯90(5)—One first conceiving, but last to reduce to practice, entitled to priority when diligent.

One who was the first to conceive an invention, and who was diligent, was entitled to priority over another, first reducing the invention to practice.

Appeal from a Decision of the Commissioner of Patents.

Interference proceeding between Karl D. Smith and Robert Warnock. From a decision granting Smith priority, except as to one count, both parties appeal. Affirmed.

Fred L. Chappell and Otis A. Earl, both of Kalamazoo, Mich., for Smith.

Joseph H. Milans and Calvin T. Milans, both of Washington, D. C., and Edmund Quincy Moses, of New York City, for Warnock.

VAN ORSDEL, Associate Justice. This is an interference proceeding between an application filed by the party Warnock January 8, 1916, and the application of Smith, filed September 7, 1917. The invention relates to an air pump. The issue is in seven counts, of which the following are illustrative:

"1. In a structure of the class described, the combination of a cylinder, a cylinder head comprising an inner head member having an annular inlet valve seat on its outer face and a plurality of inlet passages opening into said valve seat, and a plurality of cylinder ports, an intermediate head member having an annular discharge valve seat on its outer face and discharge ports opening into said discharge valve seat, said inner and intermediate head members being formed to enclose between them an annular inlet valve chamber into which said cylinder ports open, an outer head member having a recess in its inner face constituting a discharge valve chamber, said chamber being provided with a discharge opening, annular disk-like valves arranged in said valve chambers to coact with said valve seats, and coiled seating springs for said valves, said intermediate and outer head members being provided with bore-like seats for said springs aligned with said valves.

"2. In a structure of the class described, the combination of a cylinder, a cylinder head comprising an inner head member having an annular inlet valve seat on its outer face and a plurality of inlet passages opening into said valve

seat, a plurality of cylinder ports, an intermediate head member having an annular discharge valve seat on its outer face and discharge ports opening into said discharge valve seat, said inner and intermediate head members being formed to enclose between them an annular inlet valve chamber into which said cylinder ports open, an outer head member having a recess in its inner face constituting a discharge valve chamber, said chamber being provided with a discharge opening and annular disk-like valves arranged in said valve chambers to coact with said valve seats.

"3. In a structure of the class described, the combination with a cylinder, of a head therefor comprising a pair of superimposed head members, the inner head member having a valve seat on its outer face, a plurality of inlet ports, said head members being formed to enclose between them an inlet valve chamber into which the cylinder ports open, the superimposed member being provided with a discharge port opening into said inlet valve chamber, a valve for said discharge port, and a disk-like inlet valve.

"4. In a structure of the class described, the combination of a cylinder, a cylinder head comprising a pair of superimposed head members formed to enclose between them an annular inlet valve chamber, the inner head member having an annular inlet valve seat in its outer face and a plurality of inlet passages opening into said inlet valve chamber, the superimposed head member being provided with an annular discharge valve seat and discharge ports opening into said valve seat and to said inlet valve chamber, annular disk-like valves arranged to coact with said valve seats, and seating springs for said valves."

The Examiner of Interferences awarded priority as to all of the counts to the party Smith. The Board of Examiners in Chief affirmed the Examiner, except as to count 2, which was awarded to Warnock. The Commissioner affirmed the Board. From his decision both parties have appealed.

This case turns largely upon the single question of whether the making of certain pumps by Smith amounted to reduction to practice. In 1913 Smith made a pump, known as Exhibit 3, which was found by the tribunals below to contain all the elements set out in counts 3, 5, and 7. Smith contends that the tests made of this machine amounted to a reduction to practice, but it was held below to establish only conception. In December, 1914, Smith built another pump, known as Exhibit 7, which, like Exhibit 3, failed to meet counts 1, 2, 4, and 6. This was followed by the construction and reduction to practice of what is known as Exhibit 13, which failed to meet any of the counts, since they call for annular disk-like valves, and this pump contained a flap valve.

The Board of Examiners in Chief, in its opinion holding that Smith had failed to reduce Exhibits 3 and 7 to practice, said:

"Smith's Exhibit 7 was built and tested in December, 1914. Like Exhibit 3, it fails to satisfy counts 1, 2, 4 or 6, nor does the testimony to the successful testing of Exhibit 7 in 1914, establish reduction to practice. As in the case of Exhibit 3, the testimony does not bring out with sufficient particularity what the tests showed and the failure to follow up this form of pump at that time and the pushing of Exhibit 13 which does not satisfy any count are more significant than the assertions of the witnesses that the tests were successful."

To this point we agree with the Commissioner that Smith had failed to reduce to practice the invention in issue. We now come to a pump constructed by Smith in August, 1915, as shown in blueprint

Exhibits 15 and 17, which meet counts 2, 3, 5, and 7. It did not contain springs and "bore-like seats" called for in count 1, or the springs of counts 4 and 6. This pump was sent by the Union Steam Pump Company, of which Smith was assistant superintendent, to the Empire Cream Separator Company, where Warnock was employed. We agree with all the tribunals below that the tests made of this pump amounted to a reduction to practice. We think this conclusion is amply supported by the testimony and especially the circumstances of the test. Smith, therefore, is entitled to a date for reduction to practice for a pump as disclosed in blueprint 15 as of August, 1915.

[1, 2] The earliest date of conception that can be accorded Warnock is August, 1914. We agree with the Commissioner that what he did in 1914 towards developing a pump did not constitute reduction to practice. Like Smith's Exhibits 3 and 7, it amounted merely to an experiment. Warnock, however, accomplished reduction to practice in September, 1915. He contends that this test was begun in August, but his proof limits him to his Exhibit S, dated September 10, 1915. While it may well be that he had his machine, which was tested out in September, completed in August, it is the actual test that is essential to establish reduction to practice. The patent law recognizes no such thing as reduction to practice nunc pro tunc.

[3] Count 2 is limited to inner, intermediate and outer head members, the outer one of which has a recess in its inner face constituting a valve chamber with a valve located therein. It is also limited to a "plurality of cylinder ports." These features first appeared in exhibits introduced by Warnock and proved to have been made in March, 1915. Smith is not in position to claim conception of these features earlier than his filing date, September 7, 1915. Warnock, therefore, though the last to reduce to practice, was the first to conceive, and, being diligent, he is entitled, as held by the Commissioner, to priority as to count 2.

The decision of the Commissioner of Patents is affirmed.

Affirmed.